Filed 07/19/24

VERMONT SUPERIOR COURT

Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 22-CV-04233

---

**Jillian Taylor v. Forever 21, Inc., et al**

---

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss , Renewed  (Motion: 7)
Filer:        Walter E. Judge
Filed Date:   April 15, 2024

The motion is GRANTED IN PART and DENIED IN PART.

The Motion before the court was filed following a lengthy and carefully reasoned Decision of June 18, 2023 on Defendants' original Motion to Dismiss for Lack of Personal Jurisdiction. In that Decision, the court determined that it did not have general personal jurisdiction over Defendants (page 7). The court deferred ruling on Plaintiff's argument that the court has specific jurisdiction over Defendants. It determined that Plaintiff had made "a *prima facie* showing of minimum contacts" sufficient to survive a motion to dismiss, but that "the veracity of Forever 21's marketing and relationship towards Vermont consumers in particular and if/how this relates to Plaintiff's purchase of the sweater is underdeveloped as pleaded." Decision, page 10. Thus the court deferred a final ruling as to the "minimum contacts" requirement for specific jurisdiction while providing an opportunity for jurisdictional discovery for the parties to develop more specific facts. The court authorized a renewal of the motion to dismiss on that issue, and the motion now before the court is the renewed motion following the parties' jurisdictional discovery.

In this renewed Motion, Defendants reassert their argument for dismissal on grounds of general jurisdiction, and further argue that the criteria for specific jurisdiction are not met for any Defendant. Plaintiff does not seek to reargue the determination of lack of a basis for general jurisdiction. The ruling of June 18, 2023 is a final determination that the court does not have general jurisdiction over any Defendant.

In Plaintiff's response to the renewed motion, Plaintiff does not now oppose dismissal of the Defendants other than Forever 21, Inc. and Forever 21 Retail, Inc. Therefore, the Motion to Dismiss is granted as to Forever 21 International Holdings, Inc., Forever 21 Logistics, LLC, Forever 21 Real Estate Holdings, LLC., Alameda Holdings, LLC, and Innovative Brand Partners, LLC.

The remaining legal issue is limited to whether Plaintiff has shown facts supporting the "minimum contacts" requirement for specific jurisdiction over Forever 21, Inc. and Forever 21 Retail, Inc. The two requirements for specific jurisdiction are "minimum contacts" and "reasonableness," (i.e., whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice), as set forth on pages 7-13 of the June 18, 2023 Decision. The legal background on the "minimum contacts" criterion is set forth on pages 7-11 of the Decision. It is incorporated here without repetition.

Salient requirements are as follows. "Specific jurisdiction is satisfied when a defendant has 'fair warning' that a particular activity may subject it to the jurisdiction of a state by virtue of the fact that the defendant 'purposefully directed' its activities at residents of the forum state and that the litigation results from injuries arising out of or relating to those activities." *State v. Atl. Richfield Co.,* 2016 VT 22, ¶ 14. (Citation omitted.) There must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924. (Citations omitted.) "[F]oreseeability. . .is critical to the due process analysis . . .[which] is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Fox v. Fox,* 2014 Vt 100, ¶ 29. (Citation omitted.)57

Minimum contacts

*Forever 21 Retail, Inc.*

Forever 21 Retail, Inc. conducted business in brick-and-mortar stores in many states from which it sold Forever 21 products. It had no stores in Vermont at any time and conducted no business in Vermont. Plaintiff purchased the alleged defective sweater at its store in Massachusetts. Forever 21 Retail, Inc. did not direct its activities to residents of Vermont and had no reason to anticipate being haled into court in Vermont. Plaintiff appears to treat Forever 21 Inc. and Forever 21 Retail Inc. together as enmeshed, as though her arguments concerning Forever 21, Inc. apply to Forever 21 Retail, Inc. The only specific fact about Forever 21 Retail, Inc. alone that Plaintiff relies on in her Memorandum in support of jurisdiction is that although it is in Massachusetts, it is "one of five closest retail stores to Bellows Falls, Vermont" (where Plaintiff resides). Plaintiff's Memorandum in Support of Opposition, page 10. Plaintiff has not shown that this Defendant ever targeted marketing or advertising toward Vermont residents. The possibility that residents of Vermont might patronize its store in Massachusetts, which residents of any other state might also do, is insufficient to support a conclusion that it took any action to participate in the Vermont marketplace. The Motion to Dismiss is granted as to Forever 21 Retail, Inc.

*Forever 21, Inc.*

In seeking a ruling supporting specific jurisdiction over Forever 21, Inc, Plaintiff relies on facts that Forever 21, Inc. maintained a nationwide website for displaying and advertising its products to residents of all states, it promoted its products on social media (Facebook, Twitter, Instagram) and had a history of advertizing in national magazines, it conducted e-commerce sales of its products on its website, on-line shoppers could voluntarily opt-in to receive marketing and promotional materials by entering their email address on the website, it directed potential customers who accessed its website to stores near the viewer's location, it shipped a significant volume of products to customers' addresses in Vermont, and it registered with the Vermont Department of Taxes and filed a tax return related to e-commerce sales. In 2019, the year of Plaintiff's purchase of the sweater at issue and the incident underlying her claim of products liability damage, Forever 21, Inc. had e-commerce sales associated with Vermont shipping addresses of over $500,000, exclusive of shipping and handling. Forever 21, Inc. argues that this is only a fraction of its total national sales, but it is a substantial amount for a six month period, indicating systematic participation in the Vermont marketplace rather than an occasional isolated sale. Plaintiff argues that these activities show that it intended its products to reach Vermont consumers and thus it should expect to be haled into court by Vermont customers who experienced problems with its product.

Defendant argues that there must be a specific connection between the Defendant's conduct and the Plaintiff's purchase of the sweater that underlies the products liability claim in this case. It notes that Plaintiff did not buy the product online and did not have it shipped to Vermont. Rather, she traveled to Massachusetts and bought the sweater there. She had frequently shopped at that particular shopping center and did not go to the store in Massachusetts in response to any directions on the website. She paid cash so there was presumably no tax collected. It also relies on her statement that she could not say that she had seen the sweater advertised on the website in advance. Forever 21, Inc. argues that it does not become subject to jurisdiction in every state in the country simply by engaging in on-line sales and relies on the analysis in *Ford Motor Co.,*141 S. Ct. 1017 (2021). It argues that it cannot be subject to specific jurisdiction unless there was a specific factual connection between a particular act on its part involving Vermont and Plaintiff's purchase of the sweater, and that and there was none.

Plaintiff argues that as a Vermont resident she was in the target group of marketing activity and sales undertaken by Defendant, and that Forever 21 should be accountable under the laws of the State for the safety of a product that it sought to sell to her as a member of that target group.

Applying the analysis from *Ford Motor Co.* and the *Atlantic Richfield, Goodyear,* and *Fox* cases cited above, this court concludes that Plaintiff has shown that Defendant pitched its products to potential consumers such as Plaintiff initially by its method of advertising through media that would reach Vermont customers, and then, importantly, followed through on a regular basis by shipping orders to Vermont and collecting Vermont sales tax so that it could sell legitimately in the state. It had the opportunity to make it clear that it declined to transact business in the State of Vermont, but did not do so. On the contrary, it chose to comply with the requirements of Vermont law in order to benefit from sales to Vermont buyers.

Forever 21, Inc. argues that compliance with Vermont's tax collection law does not automatically confer specific jurisdiction. It also argues, as noted above, that making e-commerce sales does not automatically make it subject to the jurisdiction of every state. It is neither the one fact nor the other that is decisive. Rather, the issue is whether a defendant has conducted itself in relation to the laws and residents of the forum state in a manner that should lead to a reasonable anticipation on its part that it would be haled into court in connection with its activities toward a state resident. "[I]t is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction. . ." *Walden v. Fiore,* 571 U.S. 277, 285 (2014).

In this case, it is the cumulative effect of all the actions of Forever 21, Inc. that are pertinent. The fact of its broad advertising on its website and on social media and national magazines may not alone be sufficient to establish specific jurisdiction. The fact that a Vermont resident could be directed on the website to the nearest store adds some component of conduct directed at Vermont consumers. More significant is its decision to ship products on a regular basis to Vermont addresses, and, in addition, to collect and remit State sales tax. These acts collectively demonstrate a voluntary choice to participate in the marketplace in Vermont by accommodating the residents of Vermont to whom it advertised and provided access for purchasing its products. By participating in not only marketing but selling its products to Vermont customers on a regular basis in compliance with Vermont legal requirements, it should then have reasonably expected to be haled into court in Vermont. Plaintiff is in the specific target group to whom these activities were directed. It is Defendant's conduct, not Plaintiff's, that is the primary focus of determining whether Defendant engaged in minimum contacts and should expect to be haled into court.

For these reasons, the court concludes that Plaintiff has sufficiently met her burden to prove the "minimum contacts" component of the required elements for specific jurisdiction.

Reasonableness

The court affirms the analysis and reasoning set forth on pages 11-13 of the Decision of June 18, 2023 and the conclusion that "Defendants have not made a compelling case that the exercise of jurisdiction in Vermont over. . .Forever 21, Inc., is unreasonable and violates due process."

Accordingly, Plaintiff has met her burden to show both "minimum contacts" sufficient to support specific jurisdiction over Forever 21, Inc, and the "reasonableness" of such jurisdiction.

## Summary and Order

For the reasons set forth in the June 18, 2023 Decision and above, the Motion to Dismiss is *denied* as to Forever 21, Inc. and *granted* as to all other Defendants.

An Answer is due from Forever 21, Inc. no later than August 15, 2024.

Electronically signed July 19, 2024 pursuant to V.R.E.F. 9 (d).

Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned